2019 PA Super 113

| | |
|---|---|
| POPS PCE TT, LP | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| R&R RESTAURANT GROUP, LLC., F/K/A BREWSTONE PITTSBURGH, LLC, | |
| Appellant | No. 644 WDA 2018 |

Appeal from the Order Entered April 9, 2018
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 15-11052

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MURRAY, J.

OPINION BY BENDER, P.J.E.:                    FILED APRIL 11, 2019

Following this Court's November 18, 2016 remand of this case to the trial court,[1] R&R Restaurant Group, LLC, f/k/a Brewstone Pittsburgh, LLC ("Appellant") appeals from the April 9, 2018 order denying its petition to open the confessed judgment in favor of Pops PCE TT, LP ("Pops").  After careful review, we reverse and remand to the trial court for further proceedings consistent with this opinion.

This case arises from a commercial lease executed between Appellant and Pops for premises located in Pittsburgh, Pennsylvania, for a 10-year term commencing on December 22, 2013, and ending on November 30, 2023

_____

[1] See Pops PCE TT, LP v. R&R Restaurant Group, LLC, No. 1944 WDA 2015, unpublished memorandum (Pa. Super. filed Nov. 18, 2016) ("Pops I").

("Lease"). Pursuant to the terms of the Lease, Appellant was to pay Pops a total of $21,028.41 per month for the period of December 22, 2013 through December 21, 2018, and $22,421.08 per month during the period of December 22, 2018 through November 30, 2023, while remaining responsible for certain additional charges actually incurred. See Complaint in Confession of Judgment, 6/30/15, Exhibit A (Lease) at 2. In the event of a default by Appellant, the Lease contained a provision for the acceleration of rent, see id. at 28-30 ¶23, and further provided that Pops may confess judgment for all sums due under the Lease. Id. at 42 ¶45.

Appellant leased the premises with the intention of operating a restaurant and bar and, thus, avers its obligations under the Lease, in whole or in part, were contingent upon its ability to obtain a liquor license. Appellant's Petition to Open and/or Strike Judgment Entered by Confession ("Petition to Open"), 7/22/15, ¶¶21-22. The Lease instructs Appellant to "take whatever reasonable actions" to acquire the liquor license – referred to by the parties as the Landlord Liquor License ("LLL") – that was owned by a former tenant of the property. See Lease at 44 ¶49(A)(ii). In the event that Appellant is unsuccessful, the Lease provides Appellant with the option of attempting to obtain a Tenant Liquor License ("TLL"). Id. at 46-47 ¶49(A)(xi). If Appellant is unable to secure a TLL within a prescribed period of time ("TLL Transfer Period"), then Appellant is permitted to extend the TLL Transfer Period and, ultimately, to terminate the Lease by undertaking specified action:

> If, notwithstanding [Appellant's] best efforts, [Appellant] is unable to obtain approval to transfer the [TLL] to the Premises within [the TLL Transfer Period], then [Appellant] shall have the right to extend the [TLL] Transfer Period by up to sixty (60) days by delivery of written notice thereof to [Pops]. If, following such extension, [Appellant] is unable to obtain the necessary governmental approvals to sell alcoholic beverages at the [p]remises during all hours of operation, [Appellant] may elect to terminate the Lease by providing notice of its intent to terminate this Lease by: (i) delivering to [Pops], within two (2) business days following the expiration of the [TLL] Transfer Period, with written notice of its inability to obtain the [TLL] prior to expiration of the [TLL] Transfer Period and exercising its right to terminate this Lease; and (ii) including with such notice all documentary evidence of [Appellant's] efforts to obtain the [TLL] on or before expiration of the [TLL] Transfer Period. If [Appellant] elects to so terminate this Lease and satisfied all of the conditions stated in the preceding sentence with respect thereto, then this Lease shall terminate[.]

Lease at 48 ¶49(B)(iv). Paragraph 49 further states that for any period that Appellant is unable to sell alcohol "as a result of [a] pending application" for a liquor license, all minimum rent "shall be abated and shall not be due and payable until" the license is secured. Id. at 43 ¶49.

On May 31, 2014, Appellant notified Pops via e-mail that it had exhausted its efforts to transfer the LLL, was electing to obtain a TLL, and was in discussions to purchase a liquor license from a potential seller. Petition to Open, Exhibit B. On July 1, 2014, Appellant informed Pops by letter that it "intends, pursuant to [paragraph] 49(B)(iv) to elect its right to terminate the [L]ease … if it is unable to obtain approval to transfer a [TLL] to the Premises within the [TLL] Transfer Period." Id., Exhibit D ("July 1, 2014 letter"). The July 1, 2014 letter further stated that the TLL Transfer Period would expire on

August 28, 2014.[2]  As of November of 2014, Appellant continued to undertake efforts to secure a TLL to be used at the premises leased from Pops.  See Affidavit in Support of Petition to Open ("Affidavit"), 10/13/15, at 4 ¶27 (unpaginated).  Ultimately, however, Appellant did not obtain a liquor license and failed to pay rent beginning in January of 2015.  Complaint in Confession of Judgment at 5 ¶22.

On January 20, 2015, Pops filed a landlord-tenant complaint before a Magisterial District Judge ("MDJ"), seeking possession of the leased premises only.  On January 29, 2015, the MDJ entered a notice of judgment, finding, inter alia, that Appellant was in default of the Lease and granting possession of the premises to Pops.  No monetary damages were awarded.  Appellant did not appeal the MDJ's decision.  Subsequently, Pops filed a complaint in confession of judgment for money damages against Appellant.  Confessed judgment in the amount of $2,334,608.87, plus post-judgment interest and costs of suit, was entered against Appellant on June 30, 2015.  This sum included accelerated rent due under the Lease through November 2023.

On July 22, 2015, Appellant filed a petition to open and/or strike the confessed judgment, raising, inter alia, the following defenses:  (1) it had not breached the Lease; (2) its July 1, 2014 letter to Pops properly terminated the Lease; and (3) Pops was precluded from entering the confessed judgment

_____

[2] The parties are in agreement regarding the expiration date of the TLL Transfer Period.

- 4 -

pursuant to Paragraph 45 of the Lease, as Pops had already obtained possession of the leased premises. Petition to Open at 5 ¶20. On August 25, 2015, the trial court denied Appellant's request to strike the confessed judgment, but issued a rule to show cause on Pops as to why Appellant's petition to open should not be granted. In response, Pops filed an answer and new matter accompanied by a brief in which it argued generally that all of Appellant's defenses were barred by res judicata and collateral estoppel because they had already been litigated and decided by the MDJ. Appellant then filed a brief, a reply to Pops' new matter, and an affidavit prepared by Louis Caputo, Esquire, who was retained by Appellant to assist it in obtaining a liquor license.[3]

After conducting oral argument, the trial court concluded that Appellant's defenses to the confessed judgment were barred by res judicata and collateral estoppel and, on November 13, 2015, the court denied Appellant's petition to open. Appellant appealed to this Court, which issued a memorandum decision on November 18, 2016. See Pops I, supra. We held that Appellant's defenses to the entry of confessed judgment were not barred by res judicata or collateral estoppel. Accordingly, we vacated the trial court's November 13, 2015 order and remanded for further proceedings for the court to consider the defenses raised in Appellant's petition to open. Id. at *9.

_____

[3] The affidavit summarized Appellant's efforts to obtain the LLL or a TLL. See TCO at 2; Affidavit at 1-5.

- 5 -

On January 31, 2018, the trial court heard argument on the merits of Appellant's petition to open. At the hearing, Appellant maintained that this case presented questions of fact for a jury, including whether Appellant undertook reasonable steps to secure a liquor license and whether its July 1, 2014 letter properly terminated the Lease. N.T. Hearing, 1/13/18, at 6-9. Appellant also appealed to the equitable powers of the court by arguing that the confessed judgment was "extremely inequitable." Id. at 10. Pops replied that Appellant did not dispute Pops' claim of unpaid rents and, furthermore, argued that Appellant failed to properly terminate the Lease. Id. at 15, 22.

Pops extensively argued that Paragraph 49 of the Lease prescribed a specific procedure and timeline for termination: Appellant was to notify Pops of termination within two days following the expiration of the TLL Transfer Period. Pops interpreted this provision to mean, when the TLL Transfer Period expired on August 28, 2014, that Appellant was required to notify Pops between August 29 and 31, 2014. Id. at 33, 51. Pops contended that Appellant's July 1, 2014 letter could not have terminated the Lease because not only did the letter predate the expiration of the TLL Transfer Period, but Appellant also continued to pay rent and attempted to obtain a liquor license after the letter was sent. Id. at 32, 38, 44-45, 51. Pops reasoned that there was no dispute regarding any question of fact in terms of what Appellant did, but Pops argued, rather, that the issue was "what Paragraph 49 means," and that the interpretation of a contract is a question of law for the court, not the jury. Id. at 27, 52. Appellant responded, without further explanation, that

its July 1, 2014 notification to Pops was timely "[b]ased on [its] calculation of what [it] understood the [L]ease to be," and reiterated "this is a factual issue as to whether [the July 1, 2014 letter] was appropriate under the [L]ease." Id. at 51-52.[4]

On April 9, 2018, the trial court denied Appellant's petition to open. It found that Appellant's July 1, 2014 letter could give rise to a jury question as to whether [Appellant] properly terminated the Lease. Trial Court Opinion ("TCO"), 4/9/18, at 4. However, the court determined that the letter failed to include any documentary evidence of Appellant's efforts to obtain a TLL, as required by Paragraph 49(B)(iv) of the Lease. As further explained by the trial court:

> To effectively terminate the Lease, [Appellant] was required to: 1) deliver to [Pops] written notice of [Appellant's] intention to terminate the Lease within two days following the expiration of the [TLL] Transfer Period (August 28, 2014); and 2) include with the notice all documentary evidence of [Appellant's] best efforts to obtain the [TLL] on or before the expiration of the [TLL] Transfer Period. [Appellant] has set forth evidence which establishes the existence of such documentary evidence,[5] but fails to set forth evidence that any of that documentary evidence was included with [Appellant's] supposed notice of termination.

_____

[4] Following the hearing, but on the same day, Appellant filed a supplemental brief, in which it expanded on its argument that issues of material fact for the jury exist. See Appellant's Supplemental Brief, 1/31/18, at 5-6. On February 13, 2018, the trial court ordered Pops to file a responsive supplemental brief. In compliance, Pops filed a supplemental brief on March 15, 2018, and reiterated its argument that Appellant's July 1, 2014 letter did not comply with Paragraph 49(B)(iv)'s requirement for termination. See Pops' Supplemental Brief, 3/15/18, at 3-11.

[5] See id.; Affidavit at 2-4 ¶¶15, 19-21, 24.

TCO at 5. Accordingly, the court found that Appellant failed to present "sufficient evidence to give rise to a jury question as to whether it properly terminated the Lease through the delivery of the July 1, 2014 letter to [Pops]" and, thus, it concluded that opening of the confessed judgment was not warranted. Id. at 5-6.

On May 4, 2018, Appellant filed a timely notice of appeal. Appellant now presents the following issues for our review:

> A. Whether [Pops] waived its ability to challenge the sufficiency of [Appellant's] July 1, 2014 notice of termination[?]
>
> B. Whether the trial court abused its discretion and/or committed an error of law by weighing the sufficiency of the July 1, 2014 termination letter[?]
>
> C. Whether the trial court abused its discretion and/or committed an error of law by failing to properly consider principals of equity when denying [Appellant's] petition to open [confessed] judgment[?]
>
> D. Whether the trial court abused its discretion and/or committed an error of law by refusing to open the judgment when [Pops] had possession at the time it filed its complaint in confession of judgment – money damages[?]
>
> E. Whether the trial court abused its discretion or committed an error of law by denying [Appellant] the ability to conduct discovery or depositions[?]
>
>> i. Whether the issues contained herein are ripe for appeal as the trial court only deferred its decision on [Appellant's] request for depositions and discovery[?]

Appellant's Brief at 4 (unnecessary capitalization omitted).

We address Appellant's issues out of order, for ease of disposition, and remain mindful of the following:

- 8 -

We review the order denying [an] [a]ppellant's petition to open the confessed judgment for an abuse of discretion.

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

The trial court may open a confessed judgment "if the petitioner (1) acts promptly, (2) alleges a meritorious defense, and (3) can produce sufficient evidence to require submission of the case to a jury." Generally, the court will dispose of the rule on petition and answer, along with other discovery and admissions.

* * *

A meritorious defense is one upon which relief could be afforded if proven at trial.

> Pa.R.Civ.P. 2959(e) sets forth the standard by which a court determines whether a moving party has properly averred a meritorious defense. If evidence is produced which in a jury trial would require the issues to be submitted to the jury the court shall open the judgment. Furthermore, the court must view the evidence presented in the light most favorable to the moving party, while rejecting contrary evidence of the non-moving party. The petitioner need not produce evidence proving that if the judgment is opened, the petitioner will prevail. Moreover, we must accept as true the petitioner's evidence and all reasonable and proper inferences flowing therefrom.

In other words, a judgment of confession will be opened if a petitioner seeking relief therefrom produces evidence which in a jury trial would require issues to be submitted to a jury. The standard of sufficiency here is similar to the standard for a directed verdict, in that we must view the facts most favorably to the moving party, we must accept as true all the evidence and proper inferences in support of the defense raised, and we must reject all adverse allegations. The trial court can make this decision as a matter of law when the defense presented is without adequate substance, because contract construction and interpretation is generally a question of law for the court to decide.

.... In the context of a petition to open a confessed judgment, [t]he function of our [C]ourt is not to [w]eigh the evidence in support of the defense, but merely to determine whether there was sufficient evidence to go to the jury.

*Neducsin v. Caplan*, 121 A.3d 498, 506-07 (Pa. Super. 2015) (internal quotation marks, emphasis, and citations omitted).

Instantly, Appellant avers that Pops failed to argue, prior to the 2016 appeal in this case, that the July 1, 2014 letter was insufficient to terminate the Lease and, therefore, Pops is precluded from raising this argument after remand by this Court. Appellant's Brief at 17-19. In support, Appellant relies on Pa.R.C.P. 2959(c), which states: "[A] party waives all defenses and objections which are not included in the petition or answer." Id. at 18 (citing Pa.R.C.P. 2959(c)).

Contrary to Appellant's assertions, however, Pops stated in its answer and new matter that all the meritorious defenses set forth in Appellant's petition to open "fail[ed] as a matter of law under the terms of the Lease[,]" and averred that the MDJ had rejected Appellant's defense that it had previously terminated the Lease. Answer and New Matter, 9/14/15, at 5 ¶20. Moreover, at the post-remand January 31, 2018 hearing, Pops extensively argued that Appellant's July 1, 2014 letter did not terminate the Lease. See N.T. Hearing at 21-23, 25-29, 31-33, 49-54. Despite having ample opportunity to respond, Appellant failed to raise any argument – either at the hearing or in its subsequently filed supplemental brief – that Pops' contention was waived under Pa.R.C.P. 2959(c). Rather, Appellant merely stated that it believed its July 1, 2014 letter to be a timely notice of termination based on

its interpretation of the Lease. Id. at 51-52. Based on the foregoing, we conclude that Appellant's first issue is waived due to Appellant's failure to raise it before the trial court. See Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). See also Dollar Bank v. Swartz, 657 A.2d 1242, 1245 (Pa. 1995) (stating that "[a]n appellate court does not sit to review questions that were neither raised, tried, nor considered in the trial court.... It is a fundamental principle of appellate review that we will not reverse a judgment or decree on a theory that was not presented to the trial court.").

In its second issue, Appellant asserts that the trial court erred in "weighing the sufficiency" of its July 1, 2014 "termination letter." Appellant's Brief at 19. Appellant acknowledges that the interpretation of a contract is a question of law, but states that "[t]he terms of the Lease are not at issue herein." Id. at 20-21. Instead, Appellant contends that "[t]he factual question that remains for the jury is whether [Pops] had sufficient notice of [Appellant's] termination of the Lease." Id. at 21. We disagree.

The record clearly reflects that there is no disagreement regarding the fact that Appellant sent a letter to Pops on July 1, 2014, which stated: (1) that Appellant "intends, pursuant to [Paragraph] 49B(iv) to elect its right to terminate the lease ... if it is unable to obtain approval to transfer a [TLL] to the Premises within the [TLL] Transfer Period;" and (2) that the TLL Transfer Period would expire at a future date, August 28, 2014. The crux of the dispute, rather, is whether Appellant's letter complied with Paragraph

49(B)(iv)'s requirements for termination of the Lease. This issue presents a question of contract interpretation for the trial court, not an issue of fact to be submitted to a jury. See Neducsin, 121 A.3d at 507.

It is well-established that:

[C]ontract construction and interpretation is generally a question of law for the court to decide.

A contract's language is unambiguous if it can be determined without any other guide than knowledge of the simple facts on which its meaning depends. When the contract is clear and unambiguous, the meaning of the contract is ascertained from the writing alone....

"Whether a judge has correctly interpreted a writing and properly determined the legal duties which arise therefrom is a question of law for the appellate court." The legal effect or enforceability of a contact provision presents a question of law accorded full appellate review and is not limited to an abuse of discretion standard.

Id. (internal citations omitted). "Absent fraud or unconscionability, courts should not set aside terms on which sophisticated parties agreed." John B. Conomos, Inc. v. Sun Co., 831 A.2d 696, 708 (Pa. Super. 2003).

In the instant matter, Paragraph 49(B)(iv) of the Lease expressly provides, in pertinent part:

[Appellant] may elect to terminate the Lease by providing notice of its intent to terminate this Lease by: (i) delivering to [Pops], within two (2) business days following the expiration of the [TLL] Transfer Period, with written notice of its inability to obtain the [TLL] prior to expiration of [TLL] Transfer Period and exercising its right to terminate this Lease; and (ii) including with such notice all documentary evidence of [Appellant's] efforts to obtain the [TLL].

Lease at 48.[6]  The trial court interpreted this provision as follows:

> [T]o effectively terminate the Lease, [Appellant] was required to: 1) deliver to [Pops] written notice of [Appellant's] intention to terminate the Lease within two days following the expiration of the [TLL] Transfer Period (i.e., within two days of August 28, 2014; accordingly, by August 30, 2014); [7] and 2) include with the notice all documentary evidence of [Appellant's] best efforts to obtain the [TLL] on or before the expiration of the [TLL] Transfer Period, August 28, 2014.

TCO at 3 (emphasis added).  The July 1, 2014 letter was presented to Pops well prior to the expiration date of the TLL Transfer Period and merely stated that Appellant would terminate the lease at a future date if it could not obtain a liquor license.  Moreover, as reflected in the record, the letter failed to include the requisite documentary evidence of its efforts to obtain a TLL.  Accordingly, we discern no error or abuse of discretion in the trial court's finding that the July 1, 2014 letter was insufficient to terminate the Lease.

_____

[6] We note that neither party fully addressed whether Appellant was required to first seek an extension of the TLL Transfer Period before it could terminate the Lease.  See Lease at 48 ¶49(B)(iv) (providing in the event that Appellant is unable to obtain a TLL, "[Appellant] shall have the right to extend the [TLL] Transfer Period by up to sixty (60) days….  If, following such extension, [Appellant] is unable to obtain [a TLL, Appellant] may elect to terminate the Lease….").  Nevertheless, we may resolve Appellant's claim on appeal without reaching this issue, where the parties agree – regardless of whether Appellant sought or received an extension of time – that the TLL Transfer Period expired on August 28, 2014, and the termination letter at issue was dated and sent prior to that date.

[7] The clear and unambiguous phrase "within two (2) business days following the expiration of the [TLL] Transfer Period" means within two days after the expiration of the TLL Transfer Period, which the parties agree was August 28, 2014.  See Webster's Ninth New Collegiate Dictionary at 479 (1987) (defining "following" to mean "subsequent to").

In its fourth issue, Appellant argues that the trial court erred in refusing to open the judgment by which it granted Pops accelerated rent, as Pops had already been granted possession of the leased premises.[8] Appellant asserts that Pops is not legally permitted to obtain a judgment for accelerated rent through the end of the Lease, in addition to a judgment for possession of the leased premises. It is true that under Pennsylvania law, "a landlord 'can confess a judgment for future rent accruing under the acceleration clause, or a judgment in ejectment, but not both.'" Homart Development Co. v. Sgrenci, 662 A.2d 1092, 1101 (Pa. Super. 1995) (quoting Matovich v. Gradich, 187 A. 65, 69 (Pa. Super. 1936) (emphasis supplied)). See also Greco v. Woodlawn Furniture Co., 1930 WL 3618 (Pa. Super. January 1,

_____

[8] Contrary to the Dissent's contention that this issue has been waived, we determine that Appellant properly preserved this claim in its Petition to Open, wherein it averred: "[Pops] has received possession of the Lease[d] Premises and, thus, is precluded from entering the Confessed Judgment pursuant to Paragraph 45 of the Lease[.]" Appellant's Petition to Open at ¶¶14(D), 20(D). The Dissent attempts to distinguish the defense asserted in the Petition to Open from the issue raised on appeal, see Concurring & Dissenting Opinion at 3, whereas, we deem the claims to be essentially the same. Moreover, we disagree with the Dissent's implication that Appellant relied on Paragraph 45 as "the authority" for its defense asserted in paragraphs 14(D) and 20(D) of its Petition to Open. Id. Rather, we view the averments contained in these paragraphs as a claim that Pops is legally precluded from obtaining a confessed judgment on the ground that Pops already received possession of the leased premises, and we interpret the reference to Paragraph 45 as a mere citation to the relevant section of the Lease which governs confessed judgments. To the extent that the Dissent suggests Appellant makes no mention of accelerated rent in its petition, we note that Appellant's Petition to Open incorporates Paragraph 45 of the Lease, which grants Pops the remedy of judgment by confession for "unpaid rentals ... by acceleration...." Lease at 42 § 45(i).

1930) (holding a petition to open judgement confessed upon a commercial lease containing an acceleration clause for calculation of damages was properly granted where the landlord had also confessed judgment for possession of the leased premises).

As we further explained in Homart:

> The landlord may cumulate remedies provided in the lease, but he may not avail himself of double remedies insofar as they are conflicting or antagonistic. He can eject the tenant and at the same time enter judgment for the rent accrued when the tenant was evicted; but he cannot recover both the possession and the rent for the balance of the term.

Id. at 1100. Our decision in Homart was based on the following long-standing principles:

> A landlord must elect whether to confess judgment for possession and for all monies then due, or to confess judgment for all monies due for the entire term. When the judgment is entered for possession, the landlord is, of course, entitled to recover, as damages in a civil action, those losses which he suffers in attempting to re[-]let the premises for the term of the lease…. The landlord, however, cannot … enter judgment for possession and for all moneys which would otherwise be due as rents through the end of the term.

Id. at 1101 (emphasis added).

Here, the record indicates that Pops obtained a judgment for possession of the leased premises on January 29, 2015, and remained in possession of the premises at the time it filed its complaint in confession of judgment in June of 2015, in which it sought monetary damages including accelerated rent through October of 2023. Under Pennsylvania law, however, Pops was limited to seeking actual monetary damages as of the date it took possession, and it

was legally precluded from seeking accelerated damages against Appellant. See id. See also Ferrick v. Bianchini, 69 A.3d 642 (Pa. Super. 2013) (acknowledging the basic principle that a landlord must choose between taking possession of property and collecting future rents). Based on the foregoing, we deem the trial court's refusal to open the confessed judgment to be a clear error of law.

Finally, in its third issue, Appellant appeals to our equitable powers. "It is a basic tenet of our system of civil justice that a plaintiff may not obtain a double recovery for a single wrong," Homart, 662 A.2d at 1100, and, yet, that is precisely what Pops has done via the two judgments granted in its favor in the present case. Failure to open the confessed judgment results in the unjust enrichment of Pops and is clearly inequitable. "Where a judgment is entered for items … authorized by the judgment note, but excessive in amount, the court will modify the judgment and cause a proper judgment to be entered." Id. at 1101. A judgment in excess of $2.3 million, which includes more than eight years of accelerated rent, is certainly excessive and should have been modified by the trial court. See id. at 1102 (holding confessed judgment should have been opened to resolve amount of money judgment where the appellee had also confessed judgment for possession).

Moreover, there is an implication in the record that, since obtaining possession of the leased premises, Pops redeveloped the property and began leasing to another tenant. Just as Pops should not be entitled to double recovery in the form of possession and accelerated rent, equity dictates that

it should also not be permitted to collect accelerated rent from Appellant for months in which Pops has received rent from a new tenant. See H.A. Steen Industries, Inc. v. Richer Communications, Inc., 314 A.2d 319, 321 (Pa. Super. 1973) (holding that despite the strict limitations placed on the opening of a confessed judgment, the judgment must be opened, for in refusing to require the appellee to mitigate damages, the trial court committed clear error of law).

Accordingly, we reverse the April 9, 2018 order refusing to open the judgment and remand this matter to the trial court so that evidence may be offered to ascertain the actual damages suffered by Pops.[9]

Order reversed. Case remanded. Jurisdiction relinquished.

Judge Shogan joins this opinion.

Judge Murray files a concurring and dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2019

_____

[9] In light of our disposition, Appellant's final claim regarding whether it was precluded by the trial court from conducting discovery post-remand is deemed moot; thus, we need not address the merits of this issue.

- 17 -